GRINNELL *a.* STEWART.

*Supreme Court, First District; General Term, December,* 1860.

MALICIOUS PROSECUTION.—PROBABLE CAUSE.

A person's belief in a charge made by him, when arising from his own negligence in examining the evidence within his reach, does not constitute probable cause for such charge.

In an action for malicious prosecution in causing plaintiff to be arrested on a charge of fraud in contracting a debt, it appeared that the plaintiff had obtained the credit upon representations that he was the owner of certain real property, and referred to the public records of the county for his title, and the defendants searched those records, but failed to trace the title, which in fact was there; and therefore caused the arrest of plaintiff.

*Held,* that this did not show probable cause.

Where want of probable cause is proved, the jury may infer malice—that is, improper and indirect motives.

Appeal from judgment dismissing the complaint.

The action was brought by the plaintiff against three defendants, Stewart, Budd, and Avery, for malicious prosecution and false imprisonment.

At the circuit, the judge, upon the evidence which is stated in the opinion, directed a dismissal of the complaint. From this judgment the plaintiff now appealed.

*James T. Brady,* for the appellant.

*Lawrence J. Goodale,* for the respondents.

Grinnell *a.* Stewart.

By THE COURT.*—BONNEY, J.—This is an action for malicious prosecution and false imprisonment. At the trial, after the testimony was closed, the presiding justice dismissed the complaint on motion of defendants' counsel, on the grounds—

1. That malice was not shown on the part of the defendants, or either of them, in instituting the proceedings complained of;

2. That plaintiff had not shown want of probable cause for instituting said proceedings; and,

3. That the detention of the plaintiff, while held under the warrant issued in said proceedings, did not amount to false imprisonment.

The proof at the trial was, that on the 16th of December, 1856, a warrant for the arrest of the plaintiff was issued by the county judge of Jefferson county, on the complaint and affidavits of the defendants Stewart and Budd, stating (in substance) that in June, 1856, the plaintiff obtained from them, or their firm in New York, certain property by falsely and fraudulently representing that he was worth $20,000 over and above all his debts and liabilities, and that his property consisted of the one-half of the Fashion race-course on Long Island, of which he was owner. That he referred to the records in Queens county clerk's office for evidence of such ownership. That the representations were false, and plaintiff owned no such property. That on the 5th of December, 1856, Budd made personal examination of the record in said clerk's office, and found that said race-course was sold, under foreclosure proceedings, on the 23d of January, 1856, to Reuben Parsons, and it did not appear that plaintiff, after that time, was owner of such race-course or any part of it.

Under this warrant the plaintiff was arrested on the 24th of December, 1856, in the city of New York, and there detained in custody, until in January following, when he was taken by an officer to Jefferson county; and the hearing of the complaint was commenced before the county judge on the 6th and continued until the 17th of January, 1857, when the plaintiff was discharged and the complaint dismissed.

When the arrest was made, Avery and Stewart were present, and told the officer who held the warrant that they could not arrange matters, and he must take the plaintiff prisoner. They

* Present, SUTHERLAND, ALLEN, and BONNEY, JJ

said that the plaintiff had made false pretences to them that he was owner of property on Long Island, and they had searched the records and could not find it. The plaintiff then insisted that he did own the property, and had not deceived them. Stewart and Avery said that they would receive $3,000, or thereabouts, and release the plaintiff, and that they did not wish the officer to take him directly to Jefferson county, because they wanted to give him an opportunity to settle; they further said, that if the plaintiff had not money his friends had, and he could get it.

On the trial it was fully proved that all the representations made by the plaintiff in relation to his ownership of one-half of the Fashion race-course were true; that his ownership did appear by the records in Queens county clerk's office; that he acquired title by purchase at a foreclosure sale in January, 1855, and paid $26,800 in cash for the property; that his deed was recorded in said clerk's office on the 25th of February, 1855, and duly indexed, and that the judgment record in that foreclosure suit was filed in the same clerk's office.

It was also proved that, on the examination before said county judge, the defendant Budd testified that in December, 1856, he went to the Queens county clerk's office, and, with the assistance of the clerk, found that plaintiff had no title to any property in that county since the 23d of January, 1856, when said race-course was sold on a foreclosure of a mortgage and purchased by Reuben Parsons; that he made a thorough search; that the deed to Parsons, and a mortgage made by him immediately after his purchase to a man named Hearne, corresponded to the descriptions of the premises which were described by courses and distances; that the clerk showed him the papers, among which he saw the report of the referee and the record of the deed to Parsons, and an entry in the book of notices of *lis pendens.*

The complaint, notice of *lis pendens,* and judgment in such foreclosure suit, and the referee's deed to Parsons under said judgment, and his report of the sale, were then put in evidence, in and by each of which it distinctly appeared that the premises so conveyed to the plaintiff by the deed recorded in February, 1855, and of which he represented himself to be the owner, were not included in the sale made to Parsons, but were express-

Grinnell *a.* Stewart.

ly excepted from such foreclosure proceedings and sale by description, and in nearly (if not exactly) the words of the description contained in said deed to the plaintiff.

By such proof, the plaintiff, in my opinion, did show a want of probable cause for instituting said proceedings by the defendants against him for alleged fraudulent representations. He fully and clearly proved that the representations made by him were true to every intent, and that the records to which he referred the defendants, distinctly proved them to be true.

But it is said that one of the defendants, with the assistance of said county clerk, examined said records and failed to find therein the evidence of the truth of the plaintiff's representations, and that in instituting the criminal proceedings against the plaintiff, he and the other defendants acted under the conscientious (though erroneous) belief that the representations made by the plaintiff were false, and therefore an action for malicious prosecution cannot be maintained against them; and cases are cited for the principle that proof, however positive, of the innocence of a party accused and arrested, is not sufficient evidence of want of probable cause for making complaint against him, to sustain an action for malicious prosecution against the prosecutor, when he appears to have acted in good faith and in the belief that his charge was true. (Murray *a.* Long, 1 *Wend.*, 140; Foshay *a.* Ferguson, 2 *Den.*, 617; Vanderbilt *a.* Mathis, 5 *Duer*, 304; and cases referred to.)

The principle for which the defendants contend is not questioned;. but in my opinion it does not reach this case. The principal, if not only, ground for the complaint made against this plaintiff, was, that the records to which he referred as proof of the truth of his representations, were found on examination not to contain such proof, but to prove the reverse of what the plaintiff had asserted. The fact was, that the records referred to, and which one of the defendants testified that he had examined, did clearly and distinctly prove exactly what the plaintiff had stated; and the defendant who testified in relation thereto, either did not see those records or did not examine them with reasonable, or indeed with any care, or he had not the capacity to understand a plain statement of facts; and I do not understand that the law will authorize and justify a complaint and arrest for felony on the ground of false representations by the

accused, when positive evidence of the truth of his representations was furnished by him to the complainants at the time when the representations were made.   If, as I think, there was in this case sufficient proof of want of probable cause, malice might be therefore inferred; and whether or not the prosecution complained of was malicious, should have been submitted to the jury.   By malice, I understand in cases like the present to be intended, not necessarily spite or hatred against the accused, but *wrong-mindedness (malus animus)*—the being actuated by improper and indirect motives; and in my opinion, upon the evidence in this case, it might very properly have been submitted to the jury to find whether these defendants, in causing the prosecution and arrest of the plaintiff, were actuated by any regard for public justice, or a desire that a supposed offender against law and morals should be punished; or whether they intended to use this form of criminal proceeding for their private benefit, to compel from the plaintiff or his friends the payment of the sum of three thousand dollars, which the defendants claimed was due to them from the plaintiff, and upon receipt of which it was proved they, or some of them, said they would release him.

The opinions above expressed render it unnecessary for me now to consider the question of false imprisonment, the decision of which, as I view the case, will depend very much, if not entirely, on the determination of the other questions involved in the action.

The order dismissing the complaint should be set aside, and a new trial granted.   Costs to abide the event of the action.